**UNITED STATES of America, Appellee,**

v.

**Kenneth Aaron "Bud" McCAGHREN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Glen Edward AUTRY, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Charles GRIFFIN, Appellant.**

**Nos. 81–1394, 81–1414 and 81–1583.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1981.

Decided Dec. 28, 1981.

Rehearing Denied Jan. 18, 1982.

Rehearing and Rehearing En Banc Denied Feb. 12, 1982.

Ralph M. Cloar, Jr., Little Rock, Ark., for Kenneth Aaron "Bud" McCaghren.

Wm. R. Wilson, Jr., Little Rock, Ark., for Glen Edward Autry.

George W. Proctor, U. S. Atty., Robert Govar (argued), Don N. Curdie, Asst. U. S. Attys., Little Rock, Ark., for the U. S.

Gene O. Daniel, Little Rock, Ark., for Griffin.

Before STEPHENSON and McMILLIAN, Circuit Judges and GIBSON, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Kenneth Aaron "Bud" McCaghren, Glen Edward Autry, and Charles Griffin appeal their convictions for conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a), 846. McCaghren was sentenced to five years imprisonment, Autry to 30 months, and Griffin to two years. For reversal McCaghren and Autry argue that the district court [1] erred in refusing to dismiss the indictment on the ground that the government's investigation involved "demonstrably outrageous" conduct in violation of due process. Griffin argues that (1) the evidence was insufficient to support his conviction and (2) he was denied a fair trial because the government's attorney made improper and prejudicial remarks during closing argument. For the reasons discussed below, we affirm the convictions.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

Appellants were charged together in a four-count indictment alleging violation of federal drug laws. Count I charged all three appellants with conspiracy to possess with intent to distribute marijuana; counts II and III charged McCaghren with use of the telephone to facilitate the conspiracy (in violation of 21 U.S.C. § 843(b)); count IV charged Autry with possession with intent to distribute marijuana (in violation of 21 U.S.C. § 841(a)). All three appellants filed motions to dismiss the indictment for government misconduct. Following a pre-trial hearing, the district court denied the motion to dismiss. *United States v. Autry*, No. LR–CR–80–106(1), (2), (3) (E.D.Ark. Mar. 4, 1981). Thereafter Autry and McCaghren stipulated that they were members of the conspiracy described in count I of the indictment but reserved their right to appeal the denial of the motion to dismiss. The district court found Autry and McCaghren guilty of conspiracy[2] on the basis of the stipulation of facts. Griffin proceeded to trial. The jury could not arrive at a verdict and Griffin's motion for mistrial was granted. Following retrial the jury found Griffin guilty of conspiracy. These appeals followed.

As shown by the government's evidence,[3] in August of 1980 Griffin approached Steve Anderson and wanted to buy marijuana, either from Anderson or through Anderson's contacts. Griffin knew that Anderson was at that time on probation for a drug violation. Griffin did not know that Anderson had cooperated with the Drug Enforcement Administration (DEA) in prior investigations and had been paid for his help in the investigations. Griffin was interested in a sizable transaction (several hundred pounds). Anderson immediately advised the DEA of Griffin's interest in buying large quantities of marijuana. With authorization from the Department of Justice,

DEA Special Agent John Chase[4] organized an undercover "sting" operation using Anderson as the intermediary. On August 14, 1980, Chase, another DEA undercover agent (George Cazenavette), Anderson, and Griffin met in New Orleans to discuss the deal. Chase provided Griffin with a small amount of marijuana as a sample (taken from marijuana seized by the DEA in another investigation). Griffin reported the next day that his customers thought the quality of the sample was poor but that they would be interested if the quality improved.

Chase and Griffin exchanged several telephone calls in September of 1980. Griffin had been trying to arrange a buy through Anderson. Chase telephoned Griffin several times in mid-September and discussed price, quantity, Griffin's commission, and delivery. At the end of September Griffin gave Chase the telephone numbers of one of his Arkansas customers. Chase called the customer (who was McCaghren) and gave the customer the telephone number of DEA undercover agent Dave Gorman to contact in order to make delivery arrangements. At the request of Chase, Gorman had flown some 300 pounds of marijuana from Orlando, Florida, where it had been seized in another DEA investigation, to New Orleans to use in the "sale" to Griffin. Following McCaghren's instructions, Gorman travelled to Little Rock on October 2 and telephoned McCaghren. McCaghren directed Gorman to deliver the marijuana to a sporting goods store in a local shopping mall and wait for a red truck. Gorman drove to the mall and several minutes later Autry arrived in a red truck. Autry accepted only 100 pounds of the marijuana and paid Gorman $25,000 in cash. Autry was then arrested, and the money and marijuana seized. McCaghren was arrested later.

On October 4 Chase telephoned Griffin to tell him that his commission was ready.

**2.** The remaining counts against McCaghren and Autry were dismissed on the motion of the government.

**3.** This statement of facts is based upon the transcript of the motion to dismiss the indictment hearing, the transcripts of tape-recorded conversations introduced at the hearing, and the trial transcripts from Griffin's retrial.

**4.** Chase was involved in several other undercover investigations (collectively "Operation Grouper") of drug smuggling in the southeastern United States in the summer of 1980.

Griffin met Chase later that day. After Griffin asked Chase for his commission, Griffin was arrested.

*McCaghren and Autry*

██  McCaghren and Autry argue that the district court erred in denying their motion to dismiss the indictment. Appellants argue that the manner in which the DEA conducted this investigation was so unfair that the indictment should have been dismissed as a matter of law.[5] Appellants contend that the marijuana sale was in fact the product of "overreaching" on the part of the DEA agents, *citing United States v. Twigg*, 588 F.2d 373, 379–80 (3d Cir. 1978).

This due process/government overreaching argument was not foreclosed by *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).[6] *E.g., United States v. Reifsteck*, 535 F.2d 1030, 1034–35 (8th Cir. 1976); *see also United States v. Tavelman*, 650 F.2d 1133, 1139–40 (9th Cir. 1981); *United States v. Gentry*, 642 F.2d 385, 387–88 (10th Cir. 1981); *United States v. Twigg, supra*, 588 F.2d at 377–81; *United States v. Borum*, 189 U.S.App. D.C. 266, 584 F.2d 424, 427–29 & n.2 (1978); *United States v. Graves*, 556 F.2d 1319, 1323–25 (5th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978). However, we find that the government's conduct and participation in the marijuana sale in this case was not "demonstrably outrageous"[7] or fundamentally so

---

5. McCaghren and Autry expressly state that they are not asserting a "traditional entrapment defense." Brief of Appellants at 5. They argue instead that the conduct of the DEA agents was so outrageous as to constitute entrapment as a matter of law. This distinction was explained in *United States v. Quinn*, 543 F.2d 640, 647–48 (8th Cir. 1976) (citations omitted):

> The conventional concept of "unlawful entrapment" is that a criminal intent or design is deliberately implanted in the mind of an innocent person by government agents including informers and undercover agents, and that a person is not unlawfully entrapped if he has a predisposition to commit the crime, and if the agents simply give him an opportunity to commit it and work in concert with him in committing it or attempting to commit it. Whether a person has been entrapped in that sense of the term is ordinarily a question of fact for the jury with the burden being on the government to prove an absence of entrapment....
>
> Recent cases have recognized, however, that apart from any question of predisposition of a defendant to commit the offense in question, governmental participation may be so outrageous or fundamentally unfair as to deprive the defendant of due process of law or to move the courts in the exercise of their supervisory jurisdiction over the administration of criminal justice to hold that the defendant was "entrapped" as a matter of law.... A claim of entrapment on the basis of outrageous government involvement does not present any question for the jury to decide but solely a question of law for the court.

6. As noted in *United States v. Reifsteck*, 535 F.2d 1030, 1034–35 & n.4 (8th Cir. 1976):

> A plurality of the Court [in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)], by Mr. Justice Rehnquist [joined by Chief Justice Burger and Mr. Justice White], did express the view that outrageous police conduct could never bar a conviction on entrapment grounds, assuming the defendant was predisposed to commit the crime. However, five justices agreed that a court, in its supervisory capacity or under due process principles, could conceivably bar a conviction of a predisposed defendant because of outrageous police conduct.*
>
> ─────
> * The dissenting opinion of Mr. Justice Brennan with whom Mr. Justice Stewart and Mr. Justice Marshall concurred, expresses this view. [*Id.* at 495–500, 96 S.Ct. at 1652–55.] The concurring opinion of Mr. Justice Powell, with whom Mr. Justice Blackmun joined, also expresses this view. [*Id.* at 491–95, 96 S.Ct. at 1650–53.]

7. This phrase is based upon the following sentence in Mr. Justice Powell's concurring opinion in *Hampton v. United States, supra*, 425 U.S. at 495 n.7, 96 S.Ct. at 1653 n.7: "Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction." *See also United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973) ("While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, ... the instant case is distinctly not of that breed."). The requisite level of government misconduct is particularly high in contraband investigations. As noted by Justice Powell, "[A demonstrable level of outrageousness] would be especially difficult to show with re-

unfair as to bar appellants' subsequent prosecution and conviction. The DEA agents' involvement in this investigation was substantial. However,

> [g]ranting that a person is predisposed to commit an offense, we think that it may safely be said that investigative officers and agents may go a long way in concert with the individual in question without being deemed to have acted so outrageously as to violate due process or evoke the exercise by the courts of their supervisory powers so as to deny to the officers the fruits of their misconduct.

*United States v. Quinn*, 543 F.2d 640, 648 (8th Cir. 1976) (citations omitted).

Here, the evidence showed that the DEA agents, once Anderson had informed them of Griffin's interest in arranging a large drug transaction, provided Griffin and his customers, McCaghren and Autry, with the opportunity to buy 100 pounds of marijuana. Unlike *United States v. Twigg, supra*, 588 F.2d at 381, the illegal activity in the present case did not originate with the DEA agents; Griffin approached Anderson for help in arranging a large-scale transaction. In addition, the record does not support appellants' contention that the DEA agents in effect "manufactured" the drug activity at issue.[8] The record suggests that appellants were members of an existing drug "network" that the DEA agents temporarily entered as new suppliers.

■ Appellants also argue that the government's use of Anderson was impermissible. Appellants characterize Anderson as a contingent fee or bounty hunter informant. The use of this type of paid informant was disapproved in *Williamson v. United States*, 311 F.2d 441, 444 (5th Cir.

1962), *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 724 (1965), because an arrangement in which the informant is paid on a contingent basis to produce evidence against particular individuals for crimes not yet committed "might tend to a 'frame up,' or to cause an informer to induce or persuade innocent persons to commit crimes they had no previous intent or purpose to commit."

*Williamson* is not applicable here. First, the record indicates that Anderson was paid by the DEA on the basis of the investigative services he performed,[9] not on a contingent basis. Such an arrangement is not impermissible under *Williamson*. See *United States v. King*, 567 F.2d 785, 789–90 (8th Cir. 1977), *cert. denied*, 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978). Second, and more significantly, the financial arrangement between the DEA and Anderson did not induce Anderson to uncover evidence against appellants. *Id.* at 789, *citing United States v. Masri*, 547 F.2d 932, 937 (5th Cir.), *cert. denied*, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977). Griffin voluntarily sought out Anderson. Anderson then reported Griffin's interest to the DEA and, after Anderson introduced the undercover DEA agents to Griffin, the DEA agents continued the investigation without further significant assistance from Anderson.

In sum, the district court did not err in denying the motion to dismiss.

*Griffin*

■ Griffin first argues that there was insufficient evidence to support his conviction. Griffin did not, however, make a motion for judgment of acquittal at the close of the government's case or, following introduction of defense evidence, at the close

---

spect to contraband offenses, which are so difficult to detect in the absence of undercover Government involvement.... Enforcement officials therefore must be allowed flexibility adequate to counter effectively such criminal activity." *Hampton v. United States, supra*, 425 U.S. at 495 n.7, 96 S.Ct. at 1653 n.7.

**8.** The present case does not involve a "full circle" drug transaction in which an informant or undercover agent supplies illegal drugs to a defendant who then sells them to an undercov-

er agent. *See United States v. Graves*, 556 F.2d 1319, 1324 & n.7 (5th Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978).

**9.** Anderson testified at the pretrial hearing that he had received $2,500 for expenses from the DEA for the present investigation, $10,000 for another investigation in May 1980, and $5,000 for another investigation in January 1981.

of all the evidence or after the jury was discharged. Such failure constitutes a waiver of the sufficiency of the evidence question on appeal, except for plain error. Fed.R.Crim.P. 29; *e.g., United States v. Edwards*, 443 F.2d 1286, 1295 (8th Cir.), *cert. denied*, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 259 (1971); *see generally* 2 C. Wright, Federal Practice and Procedure § 469 (1969). We have examined the record in the light most favorable to the government and are satisfied that there was sufficient evidence to establish the existence of the conspiracy and Griffin's membership in that conspiracy.

Griffin next argues that the district court erred in denying his motion for mistrial following several allegedly improper and prejudicial remarks by the government's attorney during closing argument. Specifically, Griffin argues the government's attorney improperly (1) discussed at length congressional intent, the legislative history, and the policy of the Department of Justice with respect to the federal drug conspiracy law; (2) expressed his personal opinion of the defendant's guilt; and (3) misstated the law of conspiracy. The district court overruled the defense objections and denied the motion for mistrial.

■ Preliminarily we note that the trial court has broad discretion in controlling closing arguments. Absent a showing of abuse of discretion this court will not reverse. "The dominating question, always, is whether the argument complained of was so offensive as to deprive the defendant of a fair trial." We must view the prosecutor's remarks in the context of the entire trial.

*United States v. Bohr*, 581 F.2d 1294, 1301 (8th Cir.) (citations omitted), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978); *see also United States v. King*, 616 F.2d 1034, 1040–41 (8th Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980); *United States v. Dawkins*, 562 F.2d 567, 569 (8th Cir. 1977) (per curiam); *United States v. Splain*, 545 F.2d 1131, 1134–36 (8th Cir. 1976).

The facts of each case must be reviewed independently to ascertain whether the comment was "unduly prejudicial" or was "plainly unwarranted and clearly injurious." Reversal is in order only if the court determines that the jury verdict could reasonably have been affected by the argument.

One important factor to consider in determining whether a closing argument is so prejudicial to require reversal of the conviction is the amount of evidence indicating defendant's guilt.

*United States v. King, supra*, 616 F.2d at 1040 (citations omitted).

■ With respect to the government attorney's commentary about the purpose and policy of the federal drug conspiracy law,[10] we find no reversible error. Although we doubt the relevance and probative value of such a discussion in a prosecution for violation of the law, *cf. United States v. Norton*, 639 F.2d 427, 429 (8th Cir. 1981) (Gun Control Act), we do not find that this statement was "unduly prejudicial," particularly in view of the substantial evidence of Griffin's participation in the conspiracy.

■ We have reviewed the remarks[11] characterized by Griffin as expressions of the government attorney's personal belief in the guilt of the accused. This characterization is not without some merit. However, we think that these remarks, when reviewed in context, permissibly advised the jury that a guilty verdict was required in light of the government's inculpatory evidence. *See United States v. Splain, supra*, 545 F.2d at 1135 & n.2. The "guilty as sin" remarks both follow and precede references to and summaries of the government's evidence. In one instance, the government attorney expressly urged the jury to examine the evidence, cautioned the jury that his opinion meant nothing, and finally (albeit rather confusingly) stated that his opinion was based solely on the evidence presented during trial.

---

**10.** Tr. 425.

**11.** Tr. 426.

We have also examined the government attorney's comparison between train travel and conspiracy.[12]  We find no basis for reversal here.  In particular we believe the government attorney's reference to the anticipated absence of instructions about withdrawal does not state that a member of a conspiracy cannot withdraw from the conspiracy, but that withdrawal was not an issue in this case.  The district court cautioned the jury at the beginning of the trial that the parties' opening and closing arguments were not evidence, a point repeated by the government attorney.  Further, we note that defense counsel used the train example in his closing argument to argue that Griffin was not a member of the conspiracy.[13]

Accordingly, the convictions are affirmed.