**UNITED STATES, Appellee,**

v.

**Leonard T. SENIBALDI, Defendant, Appellant.**

**No. 90–1842.**

United States Court of Appeals, First Circuit.

Heard Dec. 6, 1991.

Decided March 10, 1992.

Charles A. Clifford, Charlestown, Mass., with whom Ann K. Lambert, Cambridge, Mass., was on brief, for defendant-appellant.

Douglas Cannon, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., was on brief, for appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and POLLAK,* Senior District Judge.

LOUIS H. POLLAK, Senior District Judge.

In 1989 appellant Leonard Senibaldi was indicted in the District of New Hampshire on three felony counts.

The first count charged a violation of the Kidnapping Act, 18 U.S.C. § 1201, in that "[o]n or about March 21, 1984, LEONARD SENIBALDI a/k/a 'Lenny' did willfully and knowingly cause to be transported in interstate commerce from the Commonwealth of Massachusetts to the State of New Hampshire, Harry J. Rossetti, who had theretofore been unlawfully seized, confined, kidnapped, carried and held by William E. Mercier, David F. Sullivan and Richard F. Young, unindicted co-conspirators, for ransom, reward and otherwise."

The second count charged that "[f]rom in or about March, 1984 ... through and including on or about December, 1984," Senibaldi and others conspired to violate the Kidnapping Act. The asserted objects of the conspiracy, to be achieved through "violence and threats of violence," were (1) "to obtain money, controlled substances and other property from the victim," (2) "to dissuade the victim from contacting and informing law enforcement officials concerning the kidnapping," and (3) "to induce the victim to thereafter cooperate and work for the conspirators and others in additional illegal ventures." Named in count II as unindicted co-conspirators were the persons so described in count I—William E. Mercier, David F. Sullivan and Richard F. Young.[1]

The third count charged that "[o]n or about March 21, 1984," Senibaldi violated the Travel Act, 18 U.S.C. § 1952(a)(3), in that he "travelled in interstate commerce, that is from the Commonwealth of Massachusetts to the State of New Hampshire, with the intent to promote, manage, establish or carry on, and facilitate the pro-

motion, management, establishment and carrying on of an unlawful activity, said unlawful activity being the manufacture and distribution of a controlled substance in violation of Title 21, United States Code, Section 841, and thereafter did perform and attempt to perform acts to promote, manage and carry on and facilitate the promotion, management and carrying on of said unlawful activity."

Tried to a jury, Senibaldi was acquitted under count I, the substantive Kidnapping Act charge, but convicted, under count II, of conspiracy to kidnap, and, under count III, of violating the Travel Act.

Senibaldi was sentenced to consecutive five-year terms on the two counts of which he was found guilty.

Senibaldi appeals from the judgment of conviction on counts II and III.

For the reasons that follow, we will affirm.

I

A. *The Trial of William E. Mercier, David F. Sullivan and Richard F. Young*

Prior to the filing of charges against Senibaldi, a three-count indictment was returned in the District of New Hampshire against William E. Mercier, David F. Sullivan and Richard M. Young, who were later to be designated as "unindicted co-conspirators" in the Senibaldi indictment. Mercier, Sullivan and Young were charged with the same offenses relating to Harry Rossetti—kidnapping, conspiracy to kidnap, and violation of the Travel Act—that were soon to be laid at Senibaldi's door. Indeed, the Senibaldi indictment was almost a verbatim replica of the Mercier–Sullivan–Young indictment; the chief differences were that (1) the earlier indictment made no mention of Senibaldi, and (2) the chronological terminus of the earlier indictment's conspiracy count was March 22, 1984, as against December 1984 in count II of the Senibaldi

---

* Of the Eastern District of Pennsylvania, sitting by designation.

1. Also named in count II, as an unindicted co-conspirator, was Richard Mercier; see text at note 2, *infra*.

indictment (by the same token, the earlier conspiracy count charged fewer overt acts than the later conspiracy count).

The principal government witness at the Mercier–Young–Sullivan trial was Harry Rossetti, a maker of and dealer in drugs. Rossetti told of how, late in the day on March 21, 1984, he was forced at gun-point to accompany Mercier, Sullivan and Young from Medford, Massachusetts, to Rossetti's home, a farmhouse in Kingston, New Hampshire. All night long, according to Rossetti, the three defendants conducted a search of Rossetti's home for cocaine and money—a search punctuated by such intimidating maneuvers as firing guns and swinging an axe close to Rossetti, and requiring Rossetti to douse himself with gasoline which the defendants then threatened to light with cigarette lighters. The search netted guns; cocaine; several thousand dollars in cash, Krugerrands and other valuable coins; and, after much travail, the key to Rossetti's safe deposit box. When morning came, the defendants accompanied Rossetti to his bank and oversaw the removal from his safe deposit box of more cocaine and valuable coins. Then Rossetti and his alleged captors drove back to Massachusetts. Rossetti testified that he was advised by Mercier that "if I wanted to continue anything in the drug business, I had to pay over 20 per cent of my end."

The jury acquitted Mercier, Sullivan and Young on all counts.

### B. *Senibaldi's Motion to Dismiss the Indictment*

Prior to Senibaldi's trial, Senibaldi moved to dismiss the indictment. The challenge to the Kidnapping Act count need not detain us, since Senibaldi was acquitted on that count. The challenge to the conspiracy-to-kidnap count posed a question which is central to this appeal. The district court's order denying the motion to dismiss states the question and the district court's answer:

> Because of the prior acquittals of Mercier, Young, and Sullivan, defendant suggests that he is entitled to have the conspiracy count dismissed in that he could

not be found guilty of conspiring ... [by] himself. Not only does this argument overlook the fact that defendant is alleged to have conspired with "other persons known and unknown to the grand jury," but it misplaces reliance on the rule of consistency, so-called. That rule applies with respect to acquittal of co-conspirators only when such acquittal is had by the same jury at the same trial.... This is so because different juries may reach different results in different trials. *Standefer v. United States*, 447 U.S. 10, 25 [100 S.Ct. 1999, 2008, 64 L.Ed.2d 689] (1980). Indeed, even inconsistent verdicts which are rendered in the same trial do not necessarily give rise to a right of relief. *United States v. Powell*, 469 U.S. 57 [105 S.Ct. 471, 83 L.Ed.2d 461] (1984).

The challenge to the Travel Act count posed a question of pleading. The district court addressed the question as follows:

> Count III, tracing the statutory language ... charges defendant with interstate travel for the purpose of carrying on the unlawful activity of manufacture and distribution of a controlled substance in violation of Title 21 United States Code, section 841.

> Undefined in the statute, the term "business activity" has been judicially interpreted to require a continuous course of conduct rather than sporadic casual involvement in a proscribed activity. *United States v. Bates*, 840 F.2d 858, 862–63 (11th Cir.1988); *United States v. Tavelman*, 650 F.2d 1133 (9th Cir.1981), *cert. denied*, 455 U.S. 939 [102 S.Ct. 1429, 71 L.Ed.2d 649] (1982). This does not mean that evidence of large-scale operations nor of long-term duration is required to support conviction, but there must be evidence of a continuous enterprise and one act in interstate commerce in furtherance of that enterprise. *Id.* 650 F.2d at 1140. But the issue is one of evidence, not of pleading, and, as drafted, Count III of the indictment is sufficient to withstand the motion to dismiss.

## C. *The Senibaldi Trial*

At the Senibaldi trial, Rossetti was again the government's principal witness. His testimony substantially tracked the testimony he had given at the Mercier/Sullivan/Young trial; but he also covered additional ground that related to Senibaldi:

(1) When, during the search of Rossetti's home on the night of March 21–22, Krugerrands were found, Mercier "said that he collected them and Lenny collected them." And when binoculars were found, Mercier "said that Lenny could use them."

(2) On the afternoon of March 22, Rossetti returned from Massachusetts to his farmhouse in Kingston. There he found evidence of what appeared to be a break-in. Understanding that he was now, in effect, working for Mercier, and that in exchange he was entitled to Mercier's protection, Rossetti phoned Mercier to report the apparent break-in. About two hours later, Mercier, Senibaldi, and Mercier's brother Richard[2] appeared at Rossetti's farmhouse. Senibaldi "stuck a two-shot derringer in my throat;" said that "if it was a trap and Billy [Mercier] got hurt, he'd blow my fucking brains out;" and directed Rossetti to take orders from "Billy."

(3) During the following two months Rossetti manufactured some methamphetamine and made "a few, probably five or six," payments to William Mercier. In subsequent months Rossetti arranged to see Senibaldi and William Mercier socially from time to time in order to stay on good terms with them. On one occasion Senibaldi told Rossetti that he "needed some product for some of his friends from East Boston...." On another occasion Senibaldi asked Rossetti "how much Mr. Mercier had pocketed himself out of the kidnapping/robbery." Rossetti "told him I didn't know."

## II

### *The Conspiracy Conviction*

■ The contention Senibaldi advanced in his pre-trial challenge to the conspiracy count—namely, that the acquittal of Mercier, Sullivan and Young mandated dismissal of the conspiracy charge against him—is the chief ground relied on by Senibaldi in seeking reversal of the conviction for conspiracy. But, on appeal, the form of Senibaldi's argument has changed somewhat—and for good reason.

In May of 1990, when the district court ruled on the motion to dismiss, the prevailing doctrine in this circuit was that laid down in *United States v. Bosch Morales*, 677 F.2d 1, 3 (1st Cir.1982). In that case this court acknowledged the general rule "that actual or apparent inconsistency in a criminal case is no basis for setting it aside." However, this court determined that a narrowly limited exception prevailed in the law of conspiracy—namely, "that a conspiracy conviction of one defendant will not be upheld when all other alleged co-conspirators are acquitted in the same trial." But in July of 1990, this court, in *United States v. Bucuvalas*, 909 F.2d 593 (1st Cir.1990), concluded that, in the light of the Supreme Court's opinion in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984),[3] *Bosch Morales* and

---

2. See note 1, *supra.*

3. In *Bucuvalas*, 909 F.2d at 595, we said of *Powell:*

> In *Powell*, the Court unanimously reaffirmed the *Dunn* rule [*Dunn v. United States*, 284 U.S. 390, 393 [52 S.Ct. 189, 190, 76 L.Ed. 356] (1932) ("[c]onsistency in the verdict is not necessary")]. The petitioner in *Powell* was convicted under 21 U.S.C. § 843(b) of "facilitat[ing]" certain felonies—conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine—but was acquitted of those same underlying offenses. Assuming such verdicts to be inconsistent, the Court nonetheless upheld the convictions. The Court disapproved several re-

cent cases, including our *Bosch Morales* decision, that had "begun to carve exceptions out of the *Dunn* rule," [469 U.S.] at 63, 105 S.Ct. at 475, saying that "[t]he rule established in *Dunn* ... has stood without exception in this Court for 53 years.... [W]e think it should [remain that way]." *Id.* at 69, 105 S.Ct. at 479. It held that, in the face of inconsistent verdicts, one cannot "necessarily assume[ ] that the acquittal ... was proper—the one the jury 'really means.'" *Id.* at 68, 105 S.Ct. at 478. "It is equally possible that the jury, convinced of guilt, properly reached its conclusion on [one] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense." *Id.* at 65, 105 S.Ct. at 476.

kindred decisions were in error in declaring that conspiracy cases constituted an exception to the general rule that inconsistency in a criminal verdict is not a ground for overturning it. Acknowledging the demise of *Bosch Morales*, Senibaldi now recognizes that his "prosecution ... for conspiracy is not objectionable as a violation of the now-obliterated 'rule of consistency.'" *Brief of Defendant, Appellant* 34. Accordingly, Senibaldi has recast his argument (*id.* at 34–5 (footnote omitted) (emphasis in original)):

> Senibaldi's contention is that the *prior acquittals* of all his alleged co-conspirators at the MSY trial [4] precluded his later prosecution and conviction for participation in that *same* alleged conspiracy, described (not "proven") at Senibaldi's trial with essentially the same evidence deemed inadequate at the earlier proceedings. As this Court was careful to state in *Bucuvalas*, "It has been, and remains the law that where the evidence against all of an individual's alleged co-conspirators is deemed legally insufficient, the evidence against that individual is by definition also insufficient ..." In logic and fairness, that principle applies to a situation in which a jury is the "court" which has deemed the evidence against all the defendant's co-conspirators, at an earlier trial, to have been inadequate. The conspiracy count against Senibaldi should have been dismissed prior to trial.

The argument is flawed.

*First,* it is to be noted that the *"prior acquittals"* of Senibaldi's co-conspirators would probably not have resulted in dismissal of the conspiracy charge against Senibaldi even in the hey-day of "the rule of consistency." As we observed in *Bucuvalas*, "the majority of courts invoking the rule of consistency have overturned a lone conspiracy conviction only when *all* alleged co-conspirators have been *acquitted* by a jury in the *same* trial ... [M]ost courts

have refused to apply the rule where co-conspirators have been tried separately." 909 F.2d at 595–96 n. 3 (emphasis in original).

*Second,* Senibaldi over-reads our statement in *Bucuvalas, id.* at 596, that "[i]t has been, and remains, the law that where the evidence against all of an individual's alleged co-conspirators is deemed legally insufficient, the evidence against that individual is by definition also insufficient." Senibaldi's contention that, "in logic and fairness," the quoted "principle applies to a situation in which a jury is the 'court' which has deemed the evidence ... inadequate," inappropriately conflates the roles of court (i.e. judge) and jury. A moment's revisiting of first principles will clarify the matter. The court decides at the close of the government's case whether there is legally sufficient evidence to go to the jury. If the court decides that question in the affirmative, it then becomes the jury's job, at the close of the entire case, to decide whether the legally sufficient evidence is persuasive beyond a reasonable doubt. This elementary distinction between the functions of court and jury was expressly adverted to in *Bucuvalas*: "A court's determination that there is insufficient evidence to convict cannot be equated with a jury's determination that a defendant, for whatever reason, should be acquitted." *Id.* at 597.

It follows that the pertinent question is whether the evidence against Senibaldi was "legally insufficient" to establish his participation in the alleged conspiracy to kidnap Rossetti. There was no testimony tending to establish Senibaldi's personal involvement in the seizing of Rossetti in Massachusetts on March 21, 1984, or in the subsequent forcible conveyance of Rossetti to his home in New Hampshire. Very likely the absence of such testimony was what led the jury to acquit Senibaldi on the kidnapping count. But there was substantial Rossetti testimony which, if credited by the

---

**4.** Actually, it is not quite accurate to say that "all his [Senibaldi's] alleged co-conspirators" were acquitted at the Mercier–Sullivan–Young trial. The Senibaldi indictment includes Richard Mercier—not mentioned in the earlier indictment— in the roster of Senibaldi's co-conspirators. However, Richard Mercier's alleged role seems so tangential—so much that of a minor spearbearer—that we are content to disregard him in addressing Senibaldi's argument.

jury, established Senibaldi's personal involvement as of the evening of March 22 when, according to Rossetti, Senibaldi, at derringer-point, warned Rossetti not to harm, but rather to take orders from, "Billy" Mercier. Bearing in mind that the conspiracy charged against Senibaldi was alleged to have continued in force until December of 1984,[5] and to have had among its objects "dissuad[ing] the victim from contacting and informing law enforcement officials," and "induc[ing] the victim to thereafter cooperate and work for the conspirators and others in additional illegal ventures," there was abundant evidence on the basis of which the jury could have concluded that Senibaldi was a part of the conspiracy from the evening of March 22 on.[6] In sum, the evidence before the jury on the conspiracy count was not "legally insufficient."

Senibaldi also urges that his conviction on the conspiracy count was erroneous in that (1) certain statements by alleged co-conspirators William Mercier, Young and Sullivan should not have been admitted into evidence, and (2) the charge to the jury on conspiracy was flawed. It appears that these were not matters with respect to which Senibaldi's trial counsel made contemporaneous objections. Our review of these several contentions discloses nothing that approximates plain error; indeed it is not apparent that there was any error at all.[7]

### III

### *The Travel Act Conviction*

■ Senibaldi renews his claim—made in the motion to dismiss the indictment—that the Travel Act count was improperly drawn. Senibaldi argues on appeal that the Travel Act count is defective because it is not drawn in conformity with the Department of Justice's *United States Attorney's Manual,* Vol. 9, chapter 85A, at 9–1938.-145, which calls on prosecutors "to clearly set out each of the three elements of the offense: (1) interstate travel or use of an interstate facility; (2) with the intent to promote an unlawful activity; and (3) a subsequent overt act in furtherance of the unlawful activity." It is the case that the count does not charge any "overt act in furtherance of the unlawful activity." However, Senibaldi has not cited any authority for the proposition that a United States Attorney's failure to comply with the Department of Justice's guidance on the drafting of indictments is judicially cognizable. Since, as the district court noted, the count tracks the statute, we hold it to be legally sufficient. Here again, the pertinent question is whether the evidence against Senibaldi presented to the jury provided an adequate basis for a jury finding of guilt.

■ The Travel Act makes it a crime for one to travel in interstate commerce with the intent, *inter alia,* of carrying on any "unlawful activity" and thereafter in fact carrying on or attempting to carry on such "unlawful activity." The statute defines "unlawful activity" to include, *inter alia,* any "business enterprise involving ... narcotics or controlled substances." As the district court pointed out, "the term 'business activity' has been judicially interpreted to require a continuous course of con-

---

**5.** In contrast with the conspiracy alleged against "Billy" Mercier, Sullivan and Young, whose terminus was March 22.

**6.** It is possible, of course, that the jury, while acquitting Senibaldi of personal involvement in the kidnapping, could have concluded that Senibaldi was part of the conspiracy to kidnap as early as the night of March 21 or the morning of March 22. Rossetti's testimony about "Billy" Mercier's references to "Lenny" would, if credited, tend to support such an inference.

**7.** Senibaldi also makes some point about the fact that William Mercier, Sullivan and Young, were described in the Senibaldi indictment as "unindicted co-conspirators" notwithstanding that they had in fact been indicted. That the characterization was inaccurate is apparent, but it is not apparent that the inaccuracy redounded to the detriment of Senibaldi in any legally cognizable way. The district court ruled—correctly in our view—that nothing should be said to the Senibaldi jury about the Mercier–Sullivan–Young trial. In that setting, to have described Mercier and Sullivan and Young as "indicted co-conspirators" would have spawned problems, not solved them.

duct rather than sporadic casual involvement in a proscribed activity." Senibaldi contends that the government's case against him "lacked ... proofs," *Brief of Defendant, Appellant* 42, of a "continuous course of conduct." We do not agree. As noted above, Rossetti testified that during the two months following the kidnapping he manufactured some methamphetamine and "made a few, probably five or six," payments to William Mercier. If the jury credited Rossetti's testimony, they could reasonably have found that this constituted a "continuous course of conduct." It may not have proved as substantial a "business enterprise" as Senibaldi had hoped for, but it was consequential enough to be recognizable on the statute's radar screen.

■ Senibaldi also contends that two sentences in the charge to the jury "sound close to have directed a finding of 'unlawful activity.'" *Ibid.* The questioned instruction was as follows:

> The statute forbids travel in interstate commerce with the intent to promote, manage, establish, or carry on an unlawful activity, and it is therefore worded in the disjunctive; that is, the various methods of violating the statute are separated by the word or. Thus, if the jury finds beyond a reasonable doubt that any one method or way of violating the law occurred, that is sufficient, as long as the jury agrees unanimously upon the particular way or method involved.

The instruction was not objected to at trial. Moreover, we see nothing wrong in it.

### IV

Senibaldi's final contention is that "the government engaged in a course of conduct—a series of improper actions, all fairly categorized as 'foul' 'blows'—which 'overstepped the bounds of propriety ... and fairness.'" *Brief of Defendant, Appellant* 43. Under cover of this rhetoric, Senibaldi contends that (1) the prosecution was not sufficiently forthcoming with respect to the production of *Brady* and Jencks Act materials; (2) the prosecution summoned witnesses before the grand jury as an ad-

junct to its trial preparation process; and (3) the prosecution's closing arguments to the jury were improper. We have reviewed these contentions and find them wanting.

### Conclusion

Accordingly, the judgment is affirmed.