**UNITED STATES of America, Appellee,**

v.

**Emmanuel "Manny" LOUCAS, Appellant.**

**No. 80–5010.**

United States Court of Appeals,
Fourth Circuit.

Argued Aug. 15, 1980.
Decided Sept. 26, 1980.

James F. Companion, Wheeling, W. Va. (Schrader, Stamp & Recht, Wheeling, W.

Va., John R. Mitchell, Charleston, W. Va., on brief), for appellant.

William A. Kolibash, Asst. U. S. Atty., Wheeling, W. Va. (Stephen G. Jory, U. S. Atty., Wheeling, W. Va., on brief), for appellee.

Before FIELD, Senior Circuit Judge, and HALL and SPROUSE, Circuit Judges.

K. K. HALL, Circuit Judge:

Emmanuel "Manny" Loucas, a West Virginia attorney, appeals from his conviction under the Travel Act, 18 U.S.C. § 1952(a), for aiding and abetting Silvio "Birdie" Pinciaro, an Ohio resident and client who had travelled in interstate commerce for the purpose of promoting various illegal gambling activities in Hancock County, West Virginia. Pinciaro, Loucas, and Richard Tingler [1] were named in a superseding, six–count indictment which was returned by a federal grand jury on April 5, 1979. The indictment charged Pinciaro with six violations of the Travel Act for various transactions involving bribery and gambling. Loucas was named in two counts of the indictment: Count I alleged his participation in a conspiracy involving interstate commerce to commit bribery and to promote illegal gambling activities; Count VI alleged that he aided and abetted Pinciaro in promoting various gambling enterprises which also involved interstate travel.

Pinciaro and Loucas were tried jointly before a jury in May 1979. The jury found Pinciaro guilty on all six counts but could not reach a verdict as to Loucas. A mistrial was declared and Loucas was again tried in October 1979. His retrial resulted in a judgment of acquittal as to Count I and a guilty verdict for Count VI. Loucas received a sentence of five years' imprisonment, which was ultimately reduced to six months, five years of supervised probation, and a fine of $5,000. After the district court denied his post–trial motions, Loucas appealed on the basis of numerous assignments of error. Finding no reversible error, we affirm his conviction.

1. No further reference will be made regarding defendant Tingler since his role in the illegal conduct is not material to the issues raised in this appeal.

Although Loucas raises several issues on appeal, only two merit discussion: (1) whether the evidence was sufficient to sustain the conviction, and (2) whether the district court erred by not striking four jurors for cause. Appellant's initial assignment of error is that the evidence was insufficient to sustain his conviction. Although the adequacy of the evidence is challenged on several grounds, counsel's main argument is that no evidence was presented at trial to show that the retrieval of certain slot machines seized in a raid at Pinciaro's place of business was connected to any illegal gambling activity.

Count VI of the indictment alleged violations of four state statutes dealing with illegal gambling activities.[2] Of these four, counsel asserts that the prosecution only produced evidence connecting Loucas to aiding and abetting Pinciaro in a possible violation of West Virginia Code § 61–10–1, illegal possession of gambling machines. This evidence consisted chiefly of the sheriff's testimony that Loucas offered bribes of $2,000 each to the prosecuting attorney and himself in exchange for the return of Pinciaro's slot machines which had been seized in the aforesaid raid. The tape recordings of three discussions involving the alleged bribery scheme were also introduced into evidence to corroborate the sheriff's story.

Counsel for Loucas argues that a recent decision of the Supreme Court of Appeals of West Virginia has held that the mere possession of slot machines is not *per se* illegal. *State v. 25 Slot Machines*, 256 S.E.2d 595 (W.Va.1979). Thus, the fact that Loucas, through alleged acts of bribery, may have aided and abetted Pinciaro in recovering and possessing slot machines does not establish an underlying violation of state law which would support a conviction under the Travel Act.

The government maintains that it need not prove an actual violation of a specific state statute, but only an attempt to engage in activity which is illegal under state law. Thus, while Pinciaro may not have violated any West Virginia statute by merely possessing slot machines, there was allegedly overwhelming evidence that these gambling devices were acquired in furtherance of his illegal gambling operations.

■ The Travel Act is aimed primarily at organized crime and particularly at persons who reside in one state while operating or managing illegal activities located in another state. *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). The use of interstate commerce to violate or attempt to violate a state statute constitutes a federal crime, and the underlying state law merely serves a definitional purpose in characterizing the proscribed conduct. *United States v. Prince*, 515 F.2d 564, 566 (5th Cir. 1975); *United States v. Conway*, 507 F.2d 1047, 1051 (5th Cir. 1975); *United States v. Polizzi*, 500 F.2d 856, 869 (9th Cir. 1974); *United States v. Goldfarb*, 464 F.Supp. 565, 574 (E.D.Mich.1979).

■ It is generally recognized that "the existence of a state law violation is an element of the violation of the Travel Act and that the court must make a determination of whether the underlying state law has been or *could have been violated*." *United States v. Hiatt*, 527 F.2d 1048, 1051 (9th Cir. 1976) (emphasis added) [citations omitted]. Thus, "accomplishment of the State substantive offense is not a prerequisite to a Section 1952 conviction." *McIntosh v. United States*, 385 F.2d 274, 277 (8th Cir. 1967) [citations omitted].[3] Following this line of cases, our circuit has held that [t]he 'unlawful activity' specified in the [Travel] Act may be [an offense] under

---

**2.** The statutes under which Loucas was charged with aiding and abetting Pinciaro were West Virginia Code § 61–10–1 (keeping or exhibiting a gaming machine or device), § 61–10 5 (betting on games of chance), § 61–10–11 (conducting lotteries or raffles), and § 61–10–11a (conducting "policy" or "numbers" operations).

**3.** In this regard, the *McIntosh* court adopted the reasoning in *United States v. Azar*, 243 F.Supp. 345 (E.D.Mich.1964), that "[i]t is not required that the travel be in itself a criminal act, nor that the subsequent act be itself, unlawful, if it does in truth facilitate the carrying on [of unlawful activity]." *Azar* at 350. *Accord, United States v. Teemer*, 214 F.Supp. 952, 957 (N.D.W.Va.1963).

either state or federal law and reference to such law is necessary only to identify the type of 'unlawful activity' in which the defendants intended to engage. Proof that the unlawful objective was accomplished or that the referenced law has actually been violated is not a necessary element of the offense defined in section 1952.

*United States v. Pomponio*, 511 F.2d 953, 957 (4th Cir. 1975), citing *McIntosh v. United States, supra*. In light of such authority, the contention by Loucas that he could be convicted only if Pinciaro's mere possession of slot machines were illegal is untenable. Since the government introduced a large amount of evidence concerning Pinciaro's intent to dominate the gambling activities in Hancock County, a rational trier of fact could believe beyond a reasonable doubt that Loucas' conduct in effectuating the return of the slot machines did aid and abet Pinciaro in promoting or attempting to promote various gambling activities. Thus, adequate evidence did exist to support Loucas' conviction.

■ Appellant's second issue involves the refusal of the district judge to strike four jurors for cause because they had sat on an earlier panel which heard a gambling case. Loucas contends that when the defense moves to strike jurors for cause because they have sat on prior similar cases, the trial court must grant the motion. *United States v. Stevens*, 444 F.2d 630 (6th Cir. 1971). This departure from the normal requirement that actual bias be demonstrated before removing jurors for cause is founded on the "implied bias" theory of the dissent in *Casias v. United States*, 315 F.2d 614, 620 (10th Cir.), *cert. denied*, 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963):

> There is nothing new or novel in the concept of implied bias or disqualification based on consideration of policy. It is not uncommon for the law to say that one occupying a status or relationship which raises a suspicion of bias or prejudice shall not be called into the jury box, and if called, shall be excused for cause.

Counsel argues that the failure to strike the four jurors for cause was substantial error which entitles Loucas to a new trial.

The government asserts that the competency of the jurors sitting in a particular case is a matter within the discretion of the trial court. *Belvin v. United States*, 12 F.2d 548 (4th Cir. 1926). This approach is upheld by the generally accepted principle as set forth in *Government of Virgin Islands v. Williams*, 476 F.2d 771, 773 (3rd Cir. 1973), where the court stated that "[t]he federal courts have uniformly held that, absent some evidence of actual partiality, a juror is not disqualified merely because he previously sat in a similar case arising out of a separate and distinct set of circumstances even though the offenses charged in the cases are similar and some of the same prosecution witnesses testify in each case." [citations omitted] This general rule has likewise been reiterated in more recent cases; e. g., *United States v. Drake*, 494 F.2d 648, 649 (7th Cir. 1974); *United States v. Carranza*, 583 F.2d 25, 28 (1st Cir. 1978). Applying this standard to the present record, we believe the trial court did not abuse its discretion in refusing to strike the jurors for cause.

Loucas' remaining contentions on appeal are that: the interstate travel involved was insufficient to sustain the conviction; testimony about the seizure of the slot machines was improperly admitted; the trial should have been continued due to adverse pretrial publicity; certain tape recordings and transcripts were improperly admitted into evidence; the jury verdicts were inconsistent; appellant was the victim of selective and discriminatory prosecution; and the government failed to rebut the defense of entrapment. A review of these allegations discloses that they are unmeritorious.

Upon consideration of all the issues raised on appeal by Loucas, we find no reversible error and affirm the judgment of the district court.

*AFFIRMED.*