**UNITED STATES of America, Appellee,**

v.

**Milton TEPLIN, Appellant.**

No. 84–5297.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1985.

Decided Oct. 30, 1985.

---

R. Ramsey Maupin, Arlington, Va., for appellant.

William G. Otis, Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Robert J. Cynkar, Asst. U.S. Atty., Alexandria, Va., on brief), for appellee.

Before MURNAGHAN and SNEEDEN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

SNEEDEN, Circuit Judge:

The defendant, Milton Teplin, appeals his conviction for traveling in interstate commerce with the intent to facilitate extortion, in violation of the Travel Act, 18 U.S.C. § 1952(a)(3); and for attempted extortion, in violation of 18 U.S.C. § 13, assimilating Va.Code §§ 18.2–26 and 18.2–59. The defendant alleges several errors in the proceedings below. Finding none, we affirm his conviction on both counts.

## I.

Teplin, a presently disbarred attorney from New York, had been a legal advisor of Richard Eaton, a prominent businessman in the radio and television industry. In 1974, Teplin prepared a revocation agreement that nullified a prenuptial agreement between Mr. Eaton and his wife, Elsa Eaton. The revocation agreement allowed Mrs. Eaton to claim her statutory share of Mr. Eaton's estate following his death in 1981. In May 1983, the revocation agreement was found to be valid by a state court, following a trial at which Teplin testified in favor of the validity of the agreement. In January of 1984, Mrs. Eaton received a letter from the defendant in which he suggested that things could still "go wrong" with the distribution of the estate and requested a meeting with her. On February 4, 1984, Teplin flew from New York to Washington National Airport where he met with Mrs. Eaton and her attorney. The defendant threatened to tell others involved in the probate proceedings that the revocation agreement was fraudulent unless Mrs. Eaton agreed to pay him money. He demanded the same amount that Mrs. Eaton was paying her attorney, which came to approximately $100,000. Following the meeting, Mrs. Eaton and her attorney notified the FBI, as well as the state court judge who had presided over the probate proceedings, and all other counsel involved in those proceedings. On

August 12, 1984, Teplin was convicted by a jury of attempted extortion and of a violation of the Travel Act.

## II.

The defendant first argues that the Virginia offense of attempted extortion was improperly assimilated into this federal prosecution because federal law, either 18 U.S.C. § 873 or § 875(d), already punishes extortion. The defendant contends that he should have been prosecuted under federal law rather than under the assimilated state statutes.[1] The Assimilative Crimes Act, 18 U.S.C. § 13, provides in part the following:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as proved in section 7 of this title, is guilty of any act or omission which, *although not made punishable by any enactment of Congress*, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time ..., shall be guilty of a like offense and subject to a like punishment. (emphasis added).

Our inquiry is whether the Federal statutes cited by the defendant proscribe the same conduct as do the assimilated state statutes.

A review of these federal statutes reveals that they clearly do not. Section 875(d), for example, punishes any person who "with intent to extort ... any money or other thing of value, *transmits in interstate commerce any communication* containing any threat to injure the property or reputation of ... another ...". 18 U.S.C.

§ 875(d). (emphasis added). The defendant contends that this statute is applicable because of the letter which he sent to Mrs. Eaton through interstate commerce. The letter, however, was not the vehicle through which the defendant attempted to extort money. The letter was an initial contact, with the attempted extortion occurring when the defendant actually met with Mrs. Eaton and her attorney at Washington National Airport. Thus, the defendant's conduct was not proscribed by Section 875(d).

■ Section 873 is of no greater assistance to the defendant. That section punishes anyone who demands or receives money "under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States ...". 18 U.S.C. § 873. Since the defendant's threat in this case was not a threat to expose a violation of federal law, Section 873 is inapplicable. We conclude, therefore, that state law was properly assimilated under 18 U.S.C. § 13 in the federal prosecution of this defendant.

## III.

■ The defendant next argues that the district court erred in ruling that a "claim of right" is not a defense to extortion under Virginia law. The defendant maintains that, since he had a legitimate claim of right to the money, he lacked the intent to extort. We are not persuaded by this argument. First, we fail to see what claim of right the defendant had to the money which he demanded from Mrs. Eaton. He was clearly demanding "hush

---

1. The assimilated state statutes read as follows:

§ 18.2–59. *Extorting money, etc., by threats.* —If any person threaten injury to the character, person, or property of another person or accuse him of any offense and thereby extort money, property, or pecuniary benefit or any note, bond, or other evidence of debt from him or any other person, he shall be guilty of a Class 5 felony.

§ 18.2–26. *Attempts to commit noncapital felonies; how punished.* — Every person who attempts to commit an offense which is a noncapital felony shall be punished as follows:

(1) If the felony attempted is punishable by a maximum punishment of life imprisonment, an attempt thereat shall be punishable as a Class 4 felony.

(2) If the felony attempted is punishable by a maximum punishment of twenty years' imprisonment, an attempt thereat shall be punishable as a Class 5 felony.

(3) If the felony attempted is punishable by a maximum punishment of less than twenty years' imprisonment, an attempt thereat shall be punishable as a Class 6 felony.

money" to remain silent about the alleged invalidity of the revocation agreement. Furthermore, even if Teplin could somehow have demonstrated that he was entitled to money from Mrs. Eaton, we are not convinced that a claim of right would be considered a defense to extortion under Virginia law. The defendant candidly concedes that he has found no case law to support this proposition other than a single case, *Pierce v. Commonwealth*, 205 Va. 528, 138 S.E.2d 28 (1964), commenting that the taking of property under a bona fide claim of right is not robbery. In *Pierce*, however, the court further stated that, if the claim of right is a mere pretext covering the intent to steal, the taking is robbery; and the court went on to uphold the defendants' convictions. We find the *Pierce* case to be an insufficient basis to read such a defense to extortion into Virginia law.[2]

### IV.

■ The defendant's third contention is that the district court erred in making certain comments on the evidence during its charge to the jury. The defendant's particular concern is with the following statements by the court to the jury:

> There's no question here that the alleged offense took place in the jurisdiction of the court. The government has proven each of those elements that they're required to prove in this case. The defendant himself, the argument and the stipulation is, he agrees he came to Wash-

ington, D.C., to the National Airport from New York. So there's no problem with that.

Appendix at 108. The defendant asserts that the jury could have taken the court's comments to mean that the Government had proved its entire case. This argument is without merit. It is obvious from the context of the statements that the court was referring only to the jurisdictional elements of the indictment. Jurisdiction was not, as is also obvious from the court's comments, a contested issue in the case. We find no error on the part of the district court.

### V.

■ The defendant's final assignment of error is also without merit. The defendant argues that the district court erred in holding that the two counts of the indictment were not multiplicitous. He contends that Count two, attempted extortion, was wholly contained within Count one, the Travel Act violation; and therefore the court should have dismissed Count two.[3] The district court found that these two counts charged separate offenses, and we agree. Count one charged Teplin with traveling in interstate commerce with the intent to carry on, or facilitate the carrying on of, extortion and thereafter committing some overt act or acts to facilitate the extortion. Count two charged the defendant with threatening injury to the charac-

---

**2.** The defendant maintains, citing a 1926 New York case, that a claim of right has been recognized as a defense to extortion under New York law. *But see United States v. Zappola*, 677 F.2d 264, 268 (2nd Cir.1982) *cert. denied*, 459 U.S. 866, 103 S.Ct. 145, 74 L.Ed.2d 122 (1982) ("By 1942, it was clear to this court that the New York courts no longer recognized a good-faith claim to the property as a defense to extortion.... Nor did New York's sister states recognize any kind of good faith claim to the property as a defense to extortion.").

**3.** Relevant portions of the Travel Act, 18 U.S.C. § 1952, provide the following:

§ 1952. *Interstate and foreign travel or transportation in aid of racketeering enterprises*

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or

foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means ... (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

ter, person, and property of Mrs. Eaton and thereby attempting to extort money from her. Each count required proof of at least one element that the other did not. *See United States v. Blockburger*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Travel Act Count required proof of travel in interstate commerce plus the commission of some act toward carrying on the underlying unlawful activity, while Count two required proof of the substantive state law crime of attempted extortion.[4]

▪ The key to determining whether certain counts are multiplicitous, however, is whether Congress intended to authorize cumulative punishment for the same or similar conduct. In *United States v. Truglio*, 731 F.2d 1123 (4th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 197, 83 L.Ed.2d 130 (1984), this Court found that the imposition of sentences under both RICO and the Travel Act did not violate the Double Jeopardy Clause of the Fifth Amendment. It rejected the appellants' argument that, since the Travel Act offenses were the predicate offenses of the RICO violations, prosecution for the Travel Act violations offended the Fifth Amendment. Judge Murnaghan explained, citing the Supreme Court's recent decisions in *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); and *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), that "the *Blockburger* rule is a rule of statutory construction" and that the only task of the Court was "to ascertain whether the legislature specifically has authorized cumulative punishment under RICO and the Travel Act." *Id.* at 1129. See also *United States v. Merchant*,

731 F.2d 186, (4th Cir.1984), *cert. denied* — U.S. —, 105 S.Ct. 153, 83 L.Ed.2d 91 (1984) ( [double jeopardy protection against multiple punishment] prevents the courts from imposing a sentence that exceeds the legislative mandate, but it does not independently prohibit the legislature from authorizing cumulative punishments for the same offense under separate statutory schemes). Thus, our task is to determine whether Congress intended to authorize punishment both under the Travel Act and under state substantive criminal law. We believe that it did. In passing the Travel Act, Congress clearly did not intend to preempt state law. That Act was passed, not as a means of punishing violators of state law, but as a means of punishing the use of interstate commerce to engage in unlawful activity. *See United States v. Hines*, 696 F.2d 722, 725 (10th Cir.1982). ("It is not the violation of state law which constitutes an offense under Section 1952, but rather the use of interstate means for that purpose.") *See also United States v. Loucas*, 629 F.2d 989, 991 (4th Cir.1980), *cert. denied* 450 U.S. 1030, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981) ("... the underlying state law merely serves a definitional purpose in characterizing the proscribed conduct.") Moreover, as indicated earlier, application of the *Blockburger* rule indicates Congressional intent to create a distinct offense which may be punished separately. We thus find no double jeopardy violation in the defendant's having been charged with a violation of the Travel Act and with the underlying state law crime of attempted extortion.

The conviction of the defendant is affirmed.

AFFIRMED.

---

**4.** While the Travel Act requires a determination that the underlying state law has been or could have been violated, "accomplishment of the state substantive offense is not a prerequisite to a Section 1952 conviction." *United States v. Loucas*, 629 F.2d 989, 991 (4th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981), *quoting McIntosh v. United States*, 385 F.2d 274, 277 (8th Cir.1967). *See also United States v. Pomponio*, 511 F.2d 953, 957 (4th Cir.1975), *cert. denied*, 423 U.S. 874, 96 S.Ct.

142, 46 L.Ed.2d 105 (1975) ("The 'unlawful activity' specified in the [Travel] Act may be [an offense] under state or federal law and reference to such law is necessary only to identify the type of 'unlawful' activity in which the defendants intended to engage. Proof that the unlawful objective was accomplished or that the referenced law has actually been violated is not a necessary element of the offense defined in Section 1952.")