UNITED STATES of America,
Plaintiff-Appellee,

v.

James Marty STAFFORD,
Defendant-Appellant.

No. 86–5268.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1987.

Decided Nov. 6, 1987.

---

Gary A. Feess, Los Angeles, Cal., for plaintiff-appellee.

James T. Duff, Los Angeles, Cal., for defendant-appellant.

Before PREGERSON, NELSON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

James Stafford appeals the district court's imposition of two consecutive four-year sentences under 18 U.S.C. §§ 1510 (obstruction of criminal investigations) and 1952 (interstate travel in aid of racketeering enterprises). Stafford contends that Congress did not intend to punish his conduct under both statutes and that the district court therefore should have vacated one of the sentences. We affirm.

## BACKGROUND

Stafford pled guilty to Counts 21 and 22 of the indictment. Count 22 charged that he violated 18 U.S.C. § 1510 by "willfully endeavor[ing] by means of bribery" to prevent a witness in Louisiana from informing the FBI of certain federal criminal offenses. Count 21 charged that Stafford violated 18 U.S.C. § 1952 ("Travel Act") by (1) traveling from California to Louisiana with the intent to commit an unlawful activity, namely the offense charged in Count 22; and (2) actually committing that offense.

The district court sentenced Stafford to four years confinement on each count, with the sentences to run consecutively. Stafford moved the court pursuant to Fed.R. Crim.P. 35(a) to vacate either one of the two sentences on the ground that Congress did not intend to punish his conduct twice. The court denied his motion. Stafford timely appeals from that final order. We have jurisdiction under 28 U.S.C. § 1291.

## ANALYSIS

The legality of the sentence imposed by the district court is a question of law that this court reviews de novo. *United States v. Fowler,* 794 F.2d 1446, 1449 (9th Cir. 1986), *cert. denied,* — U.S. —, 107 S.Ct. 1309, 94 L.Ed.2d 153 (1987). The Supreme Court has identified the framework of analysis for determining whether Congress intended separate punishment for multiple offenses arising from a single activity.[1] When congressional intent cannot be clearly inferred from the statutory language or

---

1. A finding that Congress intended separate punishment also precludes any double jeopardy challenge to the sentencing, for "'[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981) (quoting *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)).

legislative history, the Court employs the rule of statutory construction announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See, e.g., Ball v. United States,* 470 U.S. 856, 861–64, 105 S.Ct. 1668, 1671–73, 84 L.Ed.2d 740 (1985); *United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985); *Albernaz,* 450 U.S. at 340–43, 101 S.Ct. at 1142–45. The *Blockburger* test, however, only establishes a presumption of congressional intent and does not control when Congress' intent regarding separate punishment can be clearly inferred from the statute's language or legislative history. *Garrett v. United States,* 471 U.S. 773, 779, 105 S.Ct. 2407, 2412, 85 L.Ed.2d 764 (1985). In the present case, neither the language of the Travel Act nor its legislative history clearly indicates Congress' intent regarding separate punishment for violation of the Act and for the offense constituting the underlying "unlawful activity." Therefore, we look to the *Blockburger* test.

## I. THE *BLOCKBURGER* ANALYSIS

The *Blockburger* test looks to whether each offense

> requires proof of a different element.... [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. "The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes." *Ball,* 470 U.S. at 861, 105 S.Ct. at 1672.[2]

The first step under *Blockburger* is to identify the elements of the offenses at issue. The obstruction of a criminal investigation statute provides:

> (a) Whoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator shall be fined not more than $5,000, or imprisoned not more than five years, or both.

18 U.S.C. § 1510(a). The Travel Act provides:

> (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
>
> (1) distribute the proceeds of any unlawful activity; or
>
> (2) commit any crime of violence to further any unlawful activity; or
>
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
>
> and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
>
> (b) As used in this section "unlawful activity" means ... extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

18 U.S.C. § 1952. Thus, the elements of a Travel Act offense are: "(1) interstate commerce or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful activity." *United States v. Tavelman,* 650 F.2d 1133, 1138 (9th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982).

---

**2.** Stafford argues that he may not be punished at the same trial under both statutes because the Government used the same facts (i.e., his bribery of the informant) to satisfy the elements of both offenses. The proper focus is, however, on whether proof of one of the offenses *necessarily* proves the other, not on whether the same facts in the particular case prove both offenses. *Woodward,* 469 U.S. at 105, 105 S.Ct. at 611

(defendant's answering "no" on customs form may be separately punished both as a false statement to a government agent and as a failure to report to a customs official because each offense requires proof of a fact that the other does not); *United States v. Rubalcaba,* 811 F.2d 491, 495 (9th Cir.1987) (rejecting "same evidence" test).

Clearly the Travel Act has an interstate travel element that section 1510 does not. Therefore, proof of a section 1510 offense will not necessarily prove a Travel Act offense. Stafford argues, however, that a section 1510 offense would always be proved if a Travel Act conviction could be had for crossing state lines to perform the activity prohibited by section 1510. Thus, Stafford contends, the Travel Act subsumes the predicate section 1510 offense, and punishment for both offenses is improper.

It is no answer to Stafford's argument that the requisite "unlawful activity" for a Travel Act offense *could* include activity other than the commission of a section 1510 offense. (The Travel Act defines "unlawful activity" to include, among other things, "extortion, bribery, or arson" in violation of state or federal law. 18 U.S.C. § 1952(b).) The Supreme Court in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), reversed the imposition of consecutive sentences for felony murder and rape where the rape was the requisite felony for invoking the felony murder offense. The Court, applying the *Blockburger* analysis,[3] found the rape to be a necessary element of the felony murder, even though five other enumerated offenses (e.g., kidnapping) could serve as the predicate felony. *Id.* at 693–95, 100 S.Ct. at 1438–40. The Court held that listing six possible predicate felonies in a single felony murder statute had the same effect as six separate statutes, each defining felony murder in terms of a different felony. *Id.* at 694, 100 S.Ct. at 1439. The logic of *Whalen* applies to the Travel Act, which defines "unlawful activity" to include various federal and state offenses. Therefore, section 1510 and the Travel Act would be separate offenses for purposes of the *Blockburger* test only if section 1510 required proof of a fact beyond those required to sustain a conviction under the Travel Act for performing or attempting to perform activity unlawful *under section 1510*.[4]

We agree with the Fourth and Sixth Circuits that the Travel Act and its predicate offense will ordinarily constitute separate offenses for purposes of the *Blockburger* test. *See United States v. Teplin*, 775 F.2d 1261, 1265 (4th Cir.1985); *United States v. Finazzo*, 704 F.2d 300, 307–08 (6th Cir.), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983). The Travel Act does not require the commission of the predicate offense; rather, only an "attempt[ ] to promote" the unlawful activity, 18 U.S.C. § 1952(a), with "a subsequent overt act in furtherance of that unlawful activity." *Tavelman*, 650 F.2d at 1138; *see also United States v. Jones*, 642 F.2d 909, 913 (5th Cir.1981) (subsequent facilitating act required by Travel Act need only make the unlawful activity easier and need not itself be unlawful). Thus, proof of a Travel Act violation will not ordinarily prove a violation of the underlying offense.

Stafford claims, however, that this logic does not automatically apply to section 1510. Stafford argues that any subsequent overt act to further the activity prohibited by section 1510 is itself sufficient to

---

**3.** Although the Court in *Whalen* did not apply the *Blockburger* analysis directly, but rather applied a District of Columbia statute governing the conditions under which double punishment could be imposed, *see* 445 U.S. at 694–95, 100 S.Ct. at 1439–40, the Court found the statute to adopt the *Blockburger* test. *Id.* at 691–93, 100 S.Ct. at 1437–39.

**4.** We recognize that this court, in finding a RICO violation and its predicate conspiracy to be separate offenses, has previously declined to adopt a similar analysis. *See United States v. Solano*, 605 F.2d 1141, 1145 (9th Cir.1979) (because RICO requires only a conspiracy to commit racketeering activity in the abstract, and not necessarily the drug conspiracy charged, the drug conspiracy requires proof of elements that RICO does not), *cert. denied sub nom. England v. United States*, 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980). However, the Supreme Court's subsequent decision in *Whalen* casts doubt on this approach. *See United States v. Sutton*, 700 F.2d 1078, 1081 n. 2 (6th Cir.1983). We, of course, express no opinion as to the validity of the *Solano* holding, but note that the Sixth Circuit has upheld consecutive sentences under RICO and its predicate conspiracy on the basis of the "clear legislative intent" to permit double punishment. *Sutton*, 700 F.2d at 1081; *accord United States v. Truglio*, 731 F.2d 1123, 1128–30 (4th Cir.), *cert. denied*, 469 U.S. 862, 105 S.Ct. 197, 83 L.Ed.2d 130 (1984).

violate section 1510. If section 1510 criminalizes any effort to facilitate the bribery of an informant, including preparations for the bribe (e.g., the arrangement of a meeting with the informant and the securing of the intended bribery money), then we believe section 1510's "endeavor" and the Travel Act's "attempt[ ]" would be synonymous. In that case, violation of the Travel Act for traveling interstate to commit a section 1510 offense would necessarily entail a violation of section 1510, and multiple punishment would be improper under *Blockburger.*

The unambiguous language of section 1510, however, refutes Stafford's contention. Section 1510 prohibits "willfully endeavor[ing] by means of bribery to obstruct, delay, or prevent" communication of information to a criminal investigator. 18 U.S.C. § 1510(a). The statute does not prohibit "endeavors to bribe," but rather "endeavors to obstruct communication" through the use of bribery. The only defensible interpretation of the statute is that "by means of bribery" restricts the form of the punishable endeavor to obstruct communication.[5] On its face, the statute requires actual bribery; we refuse to read attempted bribery or efforts at bribery into the statute where Congress has not included such language.

Judge Pregerson argues in dissent that the legislative history of former section 1510[6] indicates that the statute does not require an actual bribe. It is an established rule of statutory construction that when the terms of a statute are unambiguous, judicial inquiry is complete except in rare and exceptional circumstances. *See United States v. James,* — U.S. —, 106 S.Ct. 3116, 3122, 92 L.Ed.2d 483 (1986). Even if it were necessary to resort to legislative history to interpret section 1510, the language of the House report that Judge Pregerson relies upon does not support his reading of the statute. The House report defines endeavor as

> any effort or essay to accomplish the evil purpose that this act is designed to prevent ... Thus, where a person's acts have not progressed far enough to amount to an attempt, under the act such acts would come within the scope of the word "endeavor" and then be subject to punishment.

H.R.Rep. No. 658, 90th Cong., 1st Sess., *reprinted in,* 1967 U.S.Code Cong. & Admin.News 1760, 1762. We do not dispute that endeavor should be read broadly and encompass acts that are not sufficient to constitute an attempt. This broad reading of endeavor applies, however, to the "evil purpose" of "obstruct[ing] the communication of information ... to a criminal investigator." 18 U.S.C. § 1510(a). The House Report in no way suggests that the statute encompasses "endeavoring to bribe."

Because section 1510 requires actual bribery, and the Travel Act merely requires an overt act in furtherance of the underlying unlawful activity, proof of a Travel Act offense for performing or attempting to perform a section 1510 offense will not necessarily prove a section 1510 violation. Preparations for the bribe, for example, will suffice as a subsequent facilitating act

---

**5.** Support for this interpretation can also be found in the House report on former section 1510, which describes section 1510 as prohibiting "willful attempts, by means of bribery ..., to obstruct, delay, or prevent" communications to criminal investigators. 1967 U.S.Code Cong. & Admin.News at 1763. This language apparently restricts "endeavors" to the proscribed means (including bribery) and does not include preparations to employ those means.

Those decisions interpreting the term "endeavor" in 18 U.S.C. § 1503 to include efforts to influence jurors not amounting to an actual offer or payment of money, *see, e.g., Osborn v. United States,* 385 U.S. 323, 332–33, 87 S.Ct. 429, 434–35, 17 L.Ed.2d 394 (1966) (instructing third party to bribe juror is "endeavor" even though

no bribe is offered), are distinguishable. Section 1503 prohibits "corruptly ... endeavor[ing] to influence, intimidate, or impede" jurors in discharging their duties. Unlike section 1510, section 1503 does not mention the means by which the proscribed endeavors are to be performed. Thus, section 1503 contains no requirement that an actual bribe be committed.

**6.** Former section 1510 prohibited "willfully endeavor[ing] by means of bribery, misrepresentation, intimidation, or force or threats to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator." Pub.L. 362 (1967).

for purposes of the Travel Act but will not constitute bribery for purposes of section 1510. Under *Blockburger*, the two offenses are not the same, and Congress is presumed to have intended to permit multiple punishment under them.

## II. INTERSTATE TRAVEL ELEMENT

Stafford argues that even if the Travel Act and section 1510 are different offenses under the *Blockburger* test, they are directed to the same evil—the commission of the underlying unlawful activity—and Congress would not have intended to punish his actions under both statutes.[7] Stafford cites *United States v. Roselli*, 432 F.2d 879 (9th Cir.1970), *cert. denied sub nom. Teitelbaum v. United States*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). The court in *Roselli* held that the defendant need not know that he used an interstate facility to violate the Travel Act. 432 F.2d at 890. The court gave two reasons. First, the statutory language does not require knowledge of the interstate element. *Id.* Second, and of importance to this case, the court found "quite clear that in enacting section 1952 Congress was not concerned with regulating interstate travel or the use of interstate facilities, but rather with directly suppressing unlawful local activities from which organized crime drew its sustenance." *Id.* at 891. The court found the interstate component of the Travel Act to be " 'merely a . . . ground for federal jurisdiction' " to reach the undesired underlying activity. *Id.* (quoting *United States v. Blassingame*, 427 F.2d 329, 330 (2d Cir.1970), *cert. denied*, 402 U.S. 945, 91 S.Ct. 1629, 29 L.Ed.2d 114 (1971)).

If Congress merely intended the interstate travel component of the Travel Act to provide a basis for federal jurisdiction, we would have serious doubts about Congress' intent to punish the defendant both for the underlying offense and for the same conduct under the Travel Act. We do not, however, believe Congress' intent to be so limited. The Supreme Court, in a decision subsequent to *Roselli*, found the Travel Act to be "in short, an effort to deny individuals who act for such a criminal purpose access to the channels of commerce." *Erlenbaugh v. United States*, 409 U.S. 239, 246, 93 S.Ct. 477, 482, 34 L.Ed.2d 446 (1972). The Court noted Congress' expressed concern with the inability of state law enforcement agencies to reach criminal activity spanning their borders, *id.* at 246 & n. 20, 93 S.Ct. at 481 & n. 20 (citing H.R.Rep. No. 966, 87th Cong., 1st Sess. 3, *reprinted in*, 1961 U.S.Code Cong. & Admin.News 2664, 2665 (states have difficulty reaching non-resident racketeers who control operations within the state)), and effectively disavowed *Roselli*'s reading of the limited congressional purpose behind the Travel Act. Further, the actual wording of the Travel Act belies the *Roselli* interpretation of congressional intent. If Congress used the interstate component of the Travel Act merely to obtain a jurisdictional "peg," it would have been unnecessary to define "unlawful activity" to include various federal offenses because those offenses already provided federal jurisdiction. This court in *United States v. Polizzi*, 500 F.2d 856 (9th Cir.1974), *cert. denied sub nom. Emprise Corp. v. United States*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975), also implicitly rejected the idea that the interstate travel component of the Travel Act merely provided a basis for federal jurisdiction. The court found that the plain wording of the Travel Act and the absence of any contrary indication of legislative history permitted separate punishment for each act of travel even though each act related to the same underlying unlawful activity. 500 F.2d at 897–99. If Congress merely intended the Travel Act to criminalize the underlying activity, multiple prosecutions for each act of travel to pro-

---

7. The Supreme Court on several occasions has buttressed its conclusion under the *Blockburger* analysis by noting that the separate statutes were or were not "directed to separate evils." *See Ball*, 470 U.S. at 864, 105 S.Ct. at 1673;

mote the same unlawful activity would make no sense.[8]

The *Pollizi* decision recognized the distinct danger posed by each act of travel:

Congress may well have concluded there was a separate social interest in deterring each act of travel in furtherance of an illegal enterprise: each successive trip may increase the success of the illegal activity, and a decision not to make a given trip for fear of additional penal consequences could therefore limit the harm to society § 1952 is intended to prevent.

500 F.2d at 898 n. 7. Congress' concern that the criminal's use of interstate facilities decreases the likelihood of detection by law enforcement agencies and increases the likelihood of success of the criminal endeavor, *see* 1961 U.S.Code Cong. & Admin.News at 2665, likewise could support the conclusion that Congress intended to permit separate punishment because the use of interstate facilities posed a danger distinct from the actual commission of the crime. The Supreme Court has recognized that the increased likelihood of success resulting from the employment of a particular means to a criminal end poses a "distinct danger" from the actual commission of the offense. *See Iannelli v. United States*, 420 U.S. 770, 778, 95 S.Ct. 1284, 1290, 43 L.Ed.2d 616 (1975) (Congress intended to permit separate punishment for conspiracy and the underlying offense, because, *inter alia*, conspiracy increased the likelihood of success of the underlying of-

fense). We are, therefore, unable to discern a clear congressional intent not to permit multiple punishment under the Travel Act and the underlying offense.[9]

## CONCLUSION

The Travel Act and 18 U.S.C. § 1510 each require proof of an element that the other does not. Because no clear evidence of contrary congressional intent exists, Congress is presumed to have intended to permit separate punishment for each offense. Stafford's argument that we should adopt the rule of lenity in the absence of clear congressional intent to punish his activity as separate offenses has already been answered: "if anything is to be assumed from the congressional silence on this point, it is that Congress was aware of the *Blockburger* rule and legislated with it in mind." *Albernaz*, 450 U.S. at 341–42, 101 S.Ct. at 1143–44. The judgment of the district court is AFFIRMED.

PREGERSON, Circuit Judge, dissenting.

I do not join in the majority opinion because I do not agree that proof of a violation of 18 U.S.C. § 1510(a) requires facts separate from those required for proof of a violation of 18 U.S.C. § 1952. Therefore, I believe that appellant Stafford cannot be subject to two consecutive prison sentences.

---

*Woodward*, 469 U.S. at 109, 105 S.Ct. at 613; *Albernaz*, 450 U.S. at 343, 101 S.Ct. at 1144.

8. Although *Roselli*'s interpretation of congressional intent underlying the Travel Act is overly restrictive, its holding that knowledge of the use of interstate facilities is not part of the mens rea component of a Travel Act offense is properly supported by the absence of statutory language requiring such intent, the lack of any congressional purpose that would be furthered by such a requirement, and the absence of unfairness in criminalizing the unknowing use of interstate facilities when the defendant already is knowingly engaging in unlawful activity. *Cf. United States v. Napier*, 518 F.2d 316, 319 (9th Cir.) (although Congress passed 18 U.S.C. § 1201 in part to remedy "the impunity with which kidnapping could be accomplished by crossing state lines and thereby thwarting arrest by police officers in the state of origin," this does not

mean "that Congress intended to make knowledge of state lines an essential element of the crime"), *cert. denied*, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975).

9. Stafford cites *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), where the court found the offenses of bank robbery and entry into a bank with the intent to commit a felony to merge because they shared a common mental element: the intent to steal. *Id.* at 328, 77 S.Ct. at 406. Stafford contends that *Prince* announces a rule that Congress never intends multiple punishment under two offenses that punish the same evil motive. We do not share this broad view of *Prince*. The Court in *Prince* recognized that it was dealing with "a unique statute of limited purpose," and therefore declined to use the *Blockburger* test. 352 U.S. at 325 & n. 4, 77 S.Ct. at 405 & n. 4.

Absent Congressional intent, express or implied, regarding separate punishment for overlapping federal crimes, we employ the rule of statutory construction announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Blockburger* provides "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one, is *whether each provision requires proof of a fact which the other does not." Id.* at 304, 52 S.Ct. at 182 (emphasis added); *see Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (reversing the imposition of consecutive sentences for rape and felony murder when rape was the felony used to establish felony murder).

The majority concludes that section. 1510(a) and section 1952 are separate offenses for purposes of the *Blockburger* rule because violation of section 1510(a) requires "actual bribery," Majority Opinion at 1482, while violation of section 1952 requires only movement in interstate commerce with intent to commit bribery and an overt act in furtherance of that intent. *See* Majority Opinion at 1480.

The majority's assertion that violation of section 1510(a) requires an actual bribe cannot be sustained in light of the legislative history of that section.[1] Section 1510(a) provides:

(a) Whosoever *willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information* relating to a violation of any criminal statute of the United States by any person to a criminal investigator shall be fined not more than $5,000, or imprisoned for not more than five years, or both.

(Emphasis added.) Regarding the word "endeavors" the House of Representatives report on the law states:

Here "endeavor" means any effort or essay to accomplish the evil purpose that this act is designed to prevent. The use of the word "endeavor" avoids the technical difficulties which would be involved by the use of the word "attempt." Thus, where a person's acts have not progressed far enough to amount to an attempt, under the act such acts would come within the scope of the word "endeavor" and thus be subject to punishment.

H.R.Rep. No. 658, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Admin.News 1760, 1762.

The assertion that violation of section 1510(a) requires an actual bribe is difficult to reconcile with the legislative statement that " 'endeavor' means any effort or essay to accomplish the evil purpose this act is designed to prevent." The actual bribe requirement can only be reconciled with this statement if bribery is read out of the "evil purpose" to which the House of Representatives report refers. If, as the wording of the statute suggests, the evil purpose is "bribery to obstruct, delay or prevent communication ...," then any "effort or essay" toward commission of a bribe would be sufficient to constitute a violation of the section.

In addition, the majority's actual bribe requirement cannot be reconciled with another legislative statement: "The use of the word 'endeavor' avoids the technical difficulties involved by the use of the word 'attempt.' Thus, where a person's acts have not progressed far enough to amount to an attempt, under the act such acts would still come within the scope of the word 'endeavor'...." *Id.* If an actual bribe is required for a violation of section 1510(a), then, to violate the statute at all, one must commit every overt act usually necessary to "obstruct, delay or prevent communication" by means of "bribery." Therefore, if an actual bribe is required, there can be no meaningful difference be-

---

1. The majority contends that is is not necessary to look to the legislative history to discern the meaning of section 1510. However, our goal in construing any statute "is to ascertain congressional intent and give effect to the legislative will." *Philbrook v. Glodgett,* 421 U.S. 707, 713,

95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *see also United States v. Taylor,* 802 F.2d 1108, 1113 (9th Cir.1986). Where, as here, the statutory language is unclear, we look to the legislative history. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

tween an "attempt" and an "endeavor" to perpetrate the evil the section was intended to prohibit. Therefore, the actual bribe requirement adopted by the majority cannot be reconciled with the clearly drawn distinction between "attempt" and "endeavor" which appears in the legislative history.

The conclusion to be drawn from the legislative history of section 1510(a) is unmistakable. That history indicates that section 1510(a) prohibits endeavors to bribe as well as overt acts of bribery. By committing the overt act with the intent to bribe required for violation of section 1952, appellant also "endeavor[ed] by means of bribery to obstruct ... communication of information" and thereby violated section 1510(a). Because establishing a violation of 1510(a) does not require proof of any fact not required for proof of a violation of section 1952, under *Blockburger*, appellant cannot be subject to two consecutive sentences.

WIGGINS, BRUNETTI, KOZINSKI, NOONAN, THOMPSON, O'SCANNLAIN, and LEAVY, Circuit Judges.