**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dikran BERBERIAN,
Defendant–Appellant.**

No. 86–5073.

United States Court of Appeals,
Ninth Circuit.

Argued Dec. 7, 1987.

Submitted March 10, 1988.*

Decided June 28, 1988.

---

* Submission in this case was deferred pending the filing of *United States v. Sarkissian,* 841 F.2d

959 (9th Cir.1988).

John J. Cleary, Cleary & Sevilla, San Diego, Cal., for defendant-appellant.

Thomas H. Bienert, Jr., Asst. U.S. Atty., Criminal Div., Los Angeles, Cal., for plaintiff-appellee.

Before O'SCANNLAIN and LEAVY, Circuit Judges, and KING **, District Judge.

LEAVY, Circuit Judge:

Berberian appeals his conviction by a jury of conspiracy to bomb, 18 U.S.C. §§ 371 and 844 (1982), and aiding and abetting transportation of explosive materials, 18 U.S.C. § 844(d) (1982). Berberian contends 1) the evidence was insufficient to support his conspiracy conviction; 2) the

evidence was insufficient to support his conviction of aiding and abetting transportation of explosive material; 3) his case should have been dismissed for violation of the Speedy Trial Act, 18 U.S.C. § 3162 (1982); 4) reassignment of his case to Judge Real violated due process and local rules and entitles him to a new trial; 5) the government was required to obtain wiretap authorization under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. §§ 2510–2521 (1986), not under the Foreign Intelligence Surveillance Act of 1978 (FISA), 50 U.S.C. §§ 1801–1811 (1982); 6) the district court should have disclosed the government's ex parte in camera submission of classified information. We affirm.

## FACTS AND PROCEEDINGS BELOW

In September of 1982 the FBI, as part of an investigation of Armenian terrorist groups, obtained authorization from the United States Foreign Surveillance Court (USFSC) under the Foreign Intelligence Surveillance Act (FISA) to place a wiretap on Viken Hovsepian's telephone in Santa Monica, California. From conversations intercepted by the wiretap, the FBI learned that Berberian, along with Viken Hovsepian, Karnig Sarkissian, Viken Yacoubian, and Steven Dadaian, was a participant in a plan to take violent action against the Honorary Turkish Consulate in Philadelphia.

The FBI's wiretap intercepted four conversations between Berberian and Hovsepian to arrange meetings between the two men. In one conversation, Berberian indicated he did not wish to discuss matters over the telephone; in two of the conversations, the two men spoke in code.

In October of 1982 Berberian purchased a wooden H–block, a circuit tester, and a Timex watch which he delivered to his co-defendants at the Armenian Church. When driving to the church, Berberian circled the blocks as if checking for a tail. Returning home that evening, Berberian parked, then walked to the sidewalk and

** The Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

checked up and down the street. A few minutes later, he drove away, made a U-turn, and returned home. Forty-five minutes later, he circled the neighborhood in his car as if looking for possible surveillance units.

On October 21, the USFSC authorized continuation of the wiretap because they believed a bomb or components thereof were being transported from Los Angeles to Boston on a Northwest Orient flight on which Dadaian was a passenger. FBI agents ran the luggage accompanying the flight through an x-ray scanner and detected part of a bomb in a suitcase. They opened the suitcase and found all the components necessary for a bomb, including a timing device composed of a wooden H-block, a circuit tester, and a Timex watch later identified as those purchased by Berberian.

After indictment, Berberian and the other defendants unsuccessfully moved to suppress the evidence from the FISA wiretap and to compel disclosure of an ex parte in camera submission of classified information made by the government. Thereafter, Berberian's trial was severed from his co-defendants'. Berberian and the government stipulated to excludable time under the Speedy Trial Act. Subsequently, the government appealed the court's quashing of the government's subpoena of Dadaian as a witness. This court affirmed the quashing of the subpoena. *United States v. Berberian*, 767 F.2d 1324 (9th Cir.1985).

Berberian's counsel filed a motion to withdraw from the stipulation concerning excludable time and requested that the court dismiss the case for violation of the Speedy Trial Act. Judge Pfaelzer denied the motion, recused herself, and transferred the case to Judge Real for trial.

On the first day of his trial, Berberian moved to dismiss under the Speedy Trial Act. The trial court denied the motion. The jury found Berberian guilty of conspiracy to bomb and of aiding and abetting transportation of an explosive device. He timely appealed.

## DISCUSSION

### A. Sufficiency of Evidence of Conspiracy to Bomb

This court will overturn the conspiracy conviction for insufficient evidence only if, after viewing all the evidence in the light most favorable to the government, it appears no rational jury could have found the essential elements of conspiracy beyond a reasonable doubt. *United States v. Disla*, 805 F.2d 1340, 1348 (9th Cir.1986).

Once existence of a conspiracy has been established, evidence of only a slight connection to the conspiracy is necessary in order to convict any one defendant of knowing participation in it. *United States v. Taylor*, 802 F.2d 1108, 1116 (9th Cir. 1986), *cert. denied*, — U.S. —, 107 S.Ct. 1809, 94 L.Ed.2d 164 (1987); *United States v. Hobson*, 519 F.2d 765, 775 (9th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261 (1975). Proof of a particular defendant's connection to the conspiracy can be established by circumstantial evidence. *Disla*, 805 F.2d at 1348.

Berberian concedes the existence of a conspiracy, but he argues the evidence shows he was merely a messenger or unknowing instrument of the conspirators. However, the record shows Berberian had four telephone conversations with Hovsepian, was concerned about possible surveillance, and purchased items that were included in the bomb. From such evidence a reasonable jury could have inferred, beyond a reasonable doubt, that Berberian knowingly helped create a bomb which would be used to blow up the Turkish Consulate in Philadelphia.

Berberian also argues that since interstate transportation is an element of the target offense of 18 U.S.C. § 844(d), the government must present proof Berberian knew the bomb would be transported across state lines. That argument lacks merit. The knowing use of interstate facilities is not ordinarily an essential element of substantive offenses of interstate travel. *See, e.g., United States v. Stafford*, 831 F.2d 1479, 1485 & n. 8 (9th Cir.1987) (knowing use of interstate facilities is not part of

the mens rea component of a Travel Act offense absent statutory language requiring such intent when there is no congressional purpose that would be furthered by such a requirement and absent unfairness in criminalizing the unknowing use of interstate facilities when the defendant is knowingly engaged in unlawful activity); *United States v. Muza*, 788 F.2d 1309, 1311–12 (8th Cir.1986) (government did not have to prove a defendant accused of conspiracy to commit arson in violation of 18 U.S.C. § 844(i) had actual knowledge the tavern was used in interstate commerce because interstate nexus in criminal statutes is most often solely for the purpose of conferring federal jurisdiction); *Hobson*, 519 F.2d at 769 (when defendant accused of conspiring to elude a federal officer in violation of federal law, scienter as to the federal nature of the offense is not required under 18 U.S.C. §§ 371 and 373).

B. Sufficiency of Evidence of Aiding and Abetting the Transportation of the Explosive Material

■ In reviewing the sufficiency of the evidence that Berberian aided and abetted transportation of an explosive, we view all evidence in the light most favorable to the government to determine if the jury could have found the essential elements of the charge beyond a reasonable doubt. *See Disla*, 805 F.2d at 1348. An abettor's criminal intent may be inferred from attendant facts and circumstances and need not be established by direct evidence. *United States v. Reese*, 775 F.2d 1066, 1072 (9th Cir.1985).

First, Berberian argues there is no evidence he aided in or knew of the interstate transportation of the bomb. That argument lacks merit. Scienter as to the interstate transportation element of federal offenses is not ordinarily required. *Stafford*, 831 F.2d at 1485 & n. 8; *Muza*, 788 F.2d at 1312; *Hobson*, 519 F.2d at 769.

Second, Berberian argues there is no evidence that he aided and abetted in criminal acts concerning "explosive material," as specified in Count II. Berberian reasons his purchase of an H-block, Timex watch, and circuit tester connect him with an "explosive device" but not with "explosive material." That argument lacks merit. Any explosive can be broken down into non-explosive parts; therefore, it is logical to assume explosive material includes all components of a bomb, including a timing device.

C. Speedy Trial Act

■ We review the district court's disposition of a Speedy Trial Act issue for clear error as to factual findings and de novo as to application of legal standards. *United States v. Henderson*, 746 F.2d 619, 622 (9th Cir.1984), *aff'd*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). The parties cannot stipulate to a waiver of the protections of the Speedy Trial Act. *United States v. Pringle*, 751 F.2d 419, 433–34 (1st Cir.1984). However, a defendant who seeks dismissal cannot wait until trial to assert a Speedy Trial Act violation. The statute provides, "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2).

■ On appeal, Berberian contends he did not waive his right to dismissal under the Speedy Trial Act. He argues that his oral request for dismissal, made on the first day of his trial, February 11, 1986, relates back to his Speedy Trial Act motion of November 1984 made before Judge Pfaelzer. However, in Berberian's calculations in support of his February 11, 1986 motion, he includes delay after the interlocutory appeal of the district court's quashing of the government's subpoena of a co-conspirator. Some of this delay occurred more than a year after Judge Pfaelzer denied Berberian's 1984 Speedy Trial Act motion. Under such circumstances, Berberian was required to make a new and timely pretrial motion to dismiss under the Speedy Trial Act. Certainly, it is fallacious for Berberian to argue that the nonmeritorious 1984 motion is being "renewed" by his oral motion on the day of his trial. Accordingly, we conclude Berberian waived

any right to have his case dismissed under the Speedy Trial Act. We need not reach the merits of his motion.

### D. Reassignment to Chief Judge Real

Berberian contends his case should be retried because Judge Pfaelzer's reassignment of the case to Chief Judge Real violated his right to due process and did not conform to General Order 224 of the Central District of California. Berberian's position lacks merit.

 Retrial for violation of local rules on assignment of judges is not warranted unless the defendant can show prejudice. *E.g., United States v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir.1982) (transfer of a case will not be invalidated on appeal unless the defendant succeeds in showing a pervasive climate of partiality or unfairness due to the transfer); *United States v. Radlick*, 581 F.2d 225, 230 (9th Cir.1978) (a transfer not in conformity with a local rule is not grounds for reversal when neither appellant was able to demonstrate how he was prejudiced); *United States v. Torbert*, 496 F.2d 154 (9th Cir.), *cert. denied*, 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974) (unless prejudice by the second judge is manifested at trial, the accused is assumed to have received the fair trial to which due process entitles him).

The reassignment issue arose as a collateral matter to the Speedy Trial issue. Judge Pfaelzer ordered the time from November 10, 1983, to November 6, 1984, excluded under the Speedy Trial Act, finding that, pursuant to 18 U.S.C. § 3161(h)(8)(A), the ends of justice were served by allowing Berberian to sever and have his case tried later from that of his co-defendants. Judge Pfaelzer also ordered excluded the time from August 28, 1984, to September 25, 1984, finding that, pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv), the interests of justice were served by allowing Berberian a continuance necessary to provide him with continuity of counsel. Finally, Judge Pfaelzer ordered the time period between September 25, 1984, and November 6, 1984, excluded pursuant to 18 U.S.C. § 3161(h)(3)(A) and (B) because the government's explosive experts were in Beruit, Lebanon, investigating the bombing of the United States Embassy and were unavailable for trial. Judge Pfaelzer's findings under 18 U.S.C. § 3161 were made pursuant to Berberian's representations in the parties' stipulation as to excludable time that justice would be served if Berberian could sever his case and delay his trial in order to ensure continuity of counsel, allow Berberian's counsel to narrow the issues for Berberian's trial and concentrate exclusively on the evidence relevant to Berberian's defense, and avoid any prejudice to Berberian that may have resulted from the ongoing trial of the other four co-defendants.

When Berberian's trial counsel requested that Judge Pfaelzer vacate his stipulation and dismiss for violation of the right to a speedy trial, Judge Pfaelzer told trial counsel, "I do feel that you lack integrity." She recused herself stating, "For the reason I have just stated to you, I do not feel that I should sit as a judge in this case and I am going to give it to the Chief Judge." She stated Berberian could go to trial tomorrow with Judge Real. The record does not show the condition of the trial calendar of either judge. We assume Judge Real was ready to try the case even though for other reasons the trial was delayed. ·

 On appeal, Berberian claims the reassignment was punitive and violated due process. However, a litigant takes the risk a judge will rule in a manner consistent with the litigant's request. To the extent Judge Pfaelzer's reassignment was made to protect Berberian's asserted rights under the Speedy Trial Act, he has no basis to complain. Berberian has not shown prejudice nor even argued his trial was in any way unfair. Thus, the reassignment did not violate his right to due process.

 When Judge Pfaelzer recused herself and stated she was reassigning to Chief Judge Real, Berberian objected to the reassignment to Judge Real. He did not ask that the case be randomly reassigned by the clerk's office as contemplated by General Order 224. Thus, Berberian did

not preserve for appeal any issue with respect to his claim of right to random reassignment under the local rules.

E. FISA Wiretaps and Ex Parte In Camera Material

Berberian contends the FBI's FISA wiretap was illegal and the district court should have disclosed material the government submitted to it ex parte and in camera. Berberian adopts the arguments as made in his co-defendants' briefs on these two issues. The Ninth Circuit recently affirmed the district court's decisions on the validity of the FISA wiretap and the propriety of the ex parte in camera submissions. *United States v. Sarkissian*, 841 F.2d 959 (9th Cir.1988). That opinion is controlling on the FISA and ex parte in camera issues.

The district court is AFFIRMED.